143 So.2d 193 (1962)
James RANKIN, John R. Vile, Andrew King and Jose R. Zuniga, Appellants,
v.
The STATE of Florida, Appellee.
No. 31597.
Supreme Court of Florida.
June 27, 1962.
George S. Pierce, Starke, for appellant James Rankin.
Miller Lang, Trenton, for appellant John R. Vile.
William C. Andrews, Gainesville, for appellant Andrew King.
Ira J. Carter, Jr., Gainesville, for appellant Jose R. Zuniga.
*194 Richard W. Ervin, Atty. Gen., and Bruce R. Jacob, Asst. Atty. Gen., for appellee.
THOMAS, Justice.
The appellants were convicted of committing murder in the first degree by strangling one Calvin A. Cook to death with a cloth rope, and from the eventual judgment of guilt and sentence to death in the electric chair they have appealed to this court.
The death of Calvin A. Cook occurred 28 March 1960 in a steel cell, approximately 8 x 10 feet in dimension, known as the "cage" and located in the "flat top", a disciplinary section of the State penitentiary. At the time of the homicide 12 men occupied the cell, Cook, the four appellants and seven other inmates of the prison who were being punished for infractions of the prison rules.
After the victim appeared to be dead, the prison physician was called and confirmed the fact. Then the remaining occupants of the cell were placed in different compartments and statements were taken from them with somewhat varying results, but the description of the crime developed nonetheless.
The first point presented by the appellants is a challenge of the court's denial of a motion for severance by two of the appellants on the familiar ground that testimony with reference to the participation of one defendant would necessarily reflect on the others since the jurors would not be able to isolate the evidence so as to apply it only to the defendant immediately involved. The rule has long been established that such motions are addressed to the sound discretion of the judge and rulings on them will not be disturbed in the absence of a showing of abuse. Manson v. State, Fla., 88 So.2d 272. Considering the facts peculiar to this case, namely the violent death of a person in a small space occupied by him and eleven others, it seems to us there was no violation of the judge's discretion when he held that the guilt or innocence of the four appellants could be determined in one trial. Furthermore, the State draws the attention of the court to the requirement that such motions must be verified by oath if the facts stated in them are to be taken as true. The ones here considered were neither verified nor signed by the makers. Roberson v. State, 40 Fla. 509, 24 So. 474.
Next we consider the charge of the appellants that reversible error was committed by the admission in evidence of five photographs of the dead body of Calvin A. Cook. Three of the pictures were taken after the body had been moved in the small cell; two were made at the morgue. The appellants contend that they served no purpose whatever in proving any element of the charge but were introduced "only to influence and prejudice the jury."
We approved in Mardorff v. State, 143 Fla. 64, 196 So. 625, the introduction of a photograph depicting the scene of a murder before the body had been removed and observed that the defendant would not be heard to complain of this method of making clear to the jury the scene which he himself had created. And as late as Cullaro v. State, Fla.App., 97 So.2d 40, we approved this method of enabling the jury more clearly to understand the testimony of the various witnesses. Of course, this procedure may be abused to such extent that reversible error will result but our study of the present record does not convince us that that occurred here.
There was testimony to the effect that the cell where the body was found was so dimly lighted that the doctor who was summoned could not see the discolorations which were later evident in the day-light in the morgue. This condition in itself seems to justify admission of pictures of the body taken after it was moved so that the wounds causing death would be discernible.
*195 The appellants do not convince us that the trial judge committed reversible error when he denied their motion for a view of the death scene. Obviously, as appellants and the State agree, such procedure is designed to aid the jurors in analyzing and applying the evidence. A motion to view is, too, one directed to the discretion of the trial judge. The statute provides the judge may order such a view when in his "opinion" it is "proper". Sec. 918.05, Florida Statutes 1959, F.S.A. It would not be sufficiently difficult for a jury of intelligent persons to envisage the stark appointments of the "cage" to require a look at the place, even though there was some disparity in the testimony about its size, one witness saying it was approximately 12 x 12 feet, another that it was 8 x 8 x 10.
The question we now reach has novel characteristics. At the request of the State the court called two witnesses, Richard Penney and Allen Jenkins, who, according to witnesses preceding them, had been present at the time of the homicide. We will deal first with Penney. The Assistant State Attorney frankly told the court that it was feared Penney would be hostile and that he had made contradictory statements in his presence. Thereupon the court granted the request and advised the jury that neither the State nor any defendant vouched for the testimony and that counsel for all would be privileged to examine and cross-examine the witness. Whereupon Penney proceeded to declare his ignorance. He did not remember where he was confined the day of the crime; he did not remember Calvin Cook; he only remembered hearing of the death of Cook; he did not remember being in the cell, or cage, with Cook. These were answers to questions by the judge. Replying to a question by the Assistant State Attorney, Penney did not remember going to the "Interview Room" at the prison. When asked if he made a statement, he told the judge he evidently made one, which he did not remember, then said that if he did make a statement he wished the court to know that he "would make any statement to get out of the flat top." After saying he knew the Assistant Superintendent and an employee at the penitentiary named Powell, he was asked if he told them 30 March 1960 about the events in the cage the day Cook died. He did not remember that and he did not remember signing such a statement. He was shown a written instrument and was asked if he signed it. He said the name was his but he did not know whether or not it was his signature.
Then upon the jurors being sent to their room, his examination continued with the monotonous result that the witness could not recall anything of consequence. The Assistant State Attorney read a statement purportedly made by Penney, reduced to writing, and signed by the witness, giving in considerable detail the death by strangulation of Cook. When Penney was asked if he made, read and signed the statement, he gave the now familiar answer that he did not recollect it. We should note that when asked if he denied making the statement he clung to the reply "I don't remember, sir."
The trial judge admitted only the first sentence of the statement: "On March 28, 1960, about 10:45 a.m. I was put in the cage at the flat top with Calvin Cook and nine others." The jury then returned to the box. The State Attorney then, over objection of appellants' attorneys and evidently despite the ruling, followed to some extent the statement the witness was supposed to have made and received the stereotyped answer "I don't remember."
For instance, the State Attorney asked Penney whether or not he saw the appellants when they jumped on Cook and he started to "holler." Immediately an objection was interposed to the line of questioning by reading from the supposed statement. The State Attorney, in reply to a question from the judge whether or not he was reading from the statement *196 said he was "just making deductions from this statement." Similarly the witness was asked if he saw appellant King when he clamped his hand over Cook's mouth. Later the witness was asked if, on the day the statement was supposed to have been given, anybody participated "in the killing of Cook other than King, Rankin, Zuniga and Vile," and whether or not he was asked what the other seven were doing and whether or not he answered: "Andrew King yelled for everybody to grab a hold of the rope. At this time Andrew King had the rope in his hand and his feet on Cook's chest and Swede Rankin  King had his feet on Cook's shoulders and Swede Rankin was jumping on his chest and King made the remark for everybody to get around and get a hold of the rope so that nobody could testify against them and then everybody would have an equal part in the killing. I don't remember who held on the rope. I think most of us did."
Again there was strenuous objection and the judge undertook to remove from the case any prejudicial error by charging the jury that the questions and answers were not to be considered as evidence in the case; that the questions asked only related to the credibility of the witness; further that the jurors were "to absolutely disabuse [their] minds of those statements as far as their evidentiary value are [sic] concerned."
The same procedure was followed preparatory to calling Allen Jenkins, but there was much difference in his demeanor. He refused to take the oath as a witness; he declined to say anything. When he assumed this recalcitrant attitude, the State Attorney, the jury having retired, represented to the court that the witness had on a particular date in the "Interview Room" at the prison, in the presence of the State Attorney, Assistant State Attorney, Assistant Warden, Captain of the Guard and court reporter, made and signed a statement. The witness was excused from the stand and cited for contempt of court.
These witnesses, Penney and Jenkins, were followed by at least five others all of whom had equally faulty memories, except one who refused to testify on the ground that his answers would incriminate him.
The question developed by this procedure is whether or not the State, upon impeaching a court witness by showing that he had formerly appeared and made a statement, which at the time of trial he says he does not recall, may go further and introduce the contents of the statement.
It is plain to us by the original ruling that the trial judge frowned upon such procedure when he restricted the introduction to the mere time and place of the statement and this thought is confirmed by his action in meticulously instructing the jury that the questions and answers repeated by the State Attorney could be considered only for the purpose of impeachment and not as substantive testimony. Yet the jury got from the reading of the questions, purportedly asked the witness at the time of the interview, and the answers presumably given and repeated at the trial a description of the horrible crime with which appellants had been charged and convicted and this procedure we cannot sanction. We think it was prejudicial error that requires a reversal of the judgment.
The State introduced as a witness the wife of the victim. It is obvious from what she said on the stand that she knew nothing whatever, first-hand, about her husband's death. After stating her name, residence and occupation she was asked by the Assistant State Attorney: "Did you and Mr. Cook have any children?" She answered: "One child."
The appellants insist that error was committed in allowing the wife to testify "over defendants' objections," and this may well have been, Melbourne v. State, 51 Fla. 69, 40 So. 189, Hathaway v. State, *197 Fla.App., 100 So.2d 662, 663, but the point was not preserved in the record. In the Melbourne case, supra, the court referred to the objection to the question whether the person alleged to have been killed had a wife. There was objection to the question and a motion to strike the answer.
In the instant case the objection came after the answer but no motion was made to strike the irrelevant testimony and for this reason we are not inclined to uphold the appellants' position.
When quoting in their brief from the language in the Melbourne case, supra, the appellants omitted the statement that the defendant not only objected to the offensive question but also "moved to strike the answer thereto."
The appellants challenge the confessions made by them severally as not having been free and voluntary. We have carefully read and re-read not only the confessions but the testimony of witnesses about the circumstances surrounding the taking and recording of the confessions and we have found no reason to disapprove them.
Inasmuch as this case must be remanded for a new trial, we do not pass on the sufficiency of the evidence, the point last presented by the appellants.
As we are required to do under Sec. 924.32(2), Florida Statutes 1959, F.S.A., we have examined carefully the record of the testimony in this cause and we conclude for the reason already stated that the interests of justice require a new trial.
Reversed.
ROBERTS, C.J., and TERRELL, DREW, THORNAL, O'CONNELL and
HOBSON (Retired), JJ., concur.