239 So.2d 637 (1970)
Billy Ray OLIVER, Appellant,
v.
STATE of Florida, Appellee.
No. M-142.
District Court of Appeal of Florida, First District.
October 1, 1970.
Rehearing Denied October 23, 1970.
*638 Johnson & Marshall, Jacksonville, and Alvin J. Bronstein, for appellant.
Earl Faircloth, Atty. Gen., Wallace E. Allbritton and George R. Georgieff, Asst. Attys. Gen., for appellee.
PER CURIAM.
Appellant seeks review of a judgment of conviction and sentence based upon a jury verdict finding him guilty of murder in the first degree by effecting the death of one Travis Earl Crow, III, by willfully and maliciously setting fire to and burning the building then and there occupied by the victim.
By the first of his ten points on appeal appellant challenges the correctness of the trial court's order denying his motion for a change of venue. In support of his position appellant invites attention to the extensive newspaper coverage the case received both before and during the trial. He contends that all such news stories were prejudicially adverse to him, as a result of which public opinion was so molded against *639 him that he was denied the opportunity of a fair trial. It is precisely because of the possibility of prejudice resulting from pretrial publicity that extensive voir dire examination of prospective jurors is permitted and challenges granted to the end that those harboring preconceived fixed opinions concerning a defendant's guilt or innocence may be rejected from the trial jury and not permitted to serve.
Appellant's argument is predicated upon the theoretical assumption that every prospective juror summoned for duty in the case had become inexorably prejudiced by pretrial publicity appearing in the local newspaper despite sworn statements to the contrary made by such jurors on voir dire examination. The target of appellant's position appears to be more of a condemnation of the constitutional guarantees of trial by jury and freedom of the press than an abuse of discretion by the trial court in denying his motion for a change of venue. There is no evidence in the record which impels the conclusion that the minds of prospective jurors to be summoned in the case would necessarily have been so influenced by pretrial publicity or the general atmosphere prevailing in the community as to render a fair trial impossible or impropable. The process of selecting the jury was concluded in a reasonably short period of time in view of the gravity of the offense with which appellant was charged. No complaint has been made that the number of peremptory challenges allowed appellant was insufficient to enable him to excuse from the venire all prospective jurors thought by him to be biased or prejudiced against him.
In the case of Singer v. State[1] the Supreme Court of Florida said:
"In this case, as in most of those cited above, one of the grounds of the motion for change in venue was that newspaper publicity had inflamed the minds of the public against the accused. As pointed out in those and other cases such publicity has been held to not necessarily require a change of venue, since, in this day of extended distribution of news, a sensational crime incurs great publicity not only in the county in which it occurred but throughout most, if not all, of the State. In such cases it would be difficult to find a county in which the residents thereof had not heard or read of the crime and formed opinions thereon. See Shockley v. United States, 9 Cir., 1948, 166 F.2d 704, 709, certiorari denied 334 U.S. 850, 68 S.Ct. 1502, 92 L.Ed. 1773."
Even though the factual and noninflammatory media coverage of the pretrial proceedings which occurred in the case sub judice may have created incriminatory impressions in the minds of some readers who would later be called to serve on the jury, this possibility would not per se have required that the venue of the trial be changed to another location. In commenting upon just such a not infrequent development, the Supreme Court of the United States in the case of Irvin v. Dowd[2] said:
"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in *640 court. Spies v. Illinois, 123 U.S. 131, 8 S.Ct. 21, 22, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138; Reynolds v. United States [98 U.S. 145, 25 L.Ed. 244] supra."
Appellant having failed to demonstrate an abuse of discretion in the trial court's denial of his motion for change of venue, his contention in this regard must be rejected.
Appellant next contends that his state and federal constitutional rights were violated by the manner in which the grand and petit juries were selected. Appellant has failed to demonstrate from the record before us that members of his race were systematically excluded from serving on either the grand or petit jury, and the propositions of law urged by him have been decided contrary to his position by the Supreme Court of the United States in the case of Swain v. Alabama.[3]
Appellant places great emphasis on the contention that the trial court erred in denying his motion to suppress certain admissions and confessions made by him prior to trial, and in permitting such admissions and confessions to be received in evidence over his objection. He argues that initially the confessions were not admissible because there had been no prior proof of the corpus delicti. There is competent evidence in the record from which the jury could have reasonably concluded that the corpus delicti had been adequately proved by the State in accordance with the standards prescribed by our Supreme Court in the case of Schneble v. State.[4]
Secondarily, appellant earnestly asserts that the totality of the circumstances surrounding the making of the admissions and confessions by him affirmatively establishes that they were not understandingly and voluntarily made after having been fully advised of his constitutional rights against self-incrimination.[5] Although concededly there is evidence in the record to support appellant's position on this point, there is likewise competent and substantial evidence to the contrary. The trial court heard testimony and other evidence concerning the admissibility of the confessions and statements offered by the prosecution and concluded they were understandingly and voluntarily made after appellant was fully advised of his constitutional rights. The record supports the court's ruling in this respect and it would require that we substitute our judgment for that of the trial judge in order to agree that the conclusion he reached was erroneous and constituted prejudicial error. This we are not privileged to do.[6]
Appellant next contends that the trial court erred by permitting the State to impeach a court witness, one Martha Peterson, by prior inconsistent statements before the witness had given any testimony adverse to the prosecution or in favor of the defendant Colbert. Our examination of the record reveals that at one point in the trial of appellant Colbert the trial court, at the request of the state attorney, called to the witness stand as a court witness one Martha Peterson. The state attorney, by direct examination, established that she was acquainted with appellants Colbert and Billy Ray Oliver. Although questions were propounded to the witness seeking to elicit testimony incriminating appellant Colbert as a participant in the crime with which he was charged, the witness refused to give such testimony. When it became apparent that the witness insisted she knew nothing about appellant Colbert's participation in the alleged offense, the state attorney announced he wished to try to refresh the witness' *641 memory by reading to her questions propounded and sworn answers given by her prior to the trial. Objection to this procedure was made by appellant's counsel on the ground that the State was attempting to introduce in the record substantive evidence against appellant under the guise of seeking to impeach the witness' testimony prior to the time the witness had made any statements adverse to the prosecution or in favor of appellant. This objection was overruled and the state attorney was permitted to read to the witness a series of questions asked her at an interview long prior to the trial, and the answers which she purportedly gave at that time. Such answers given in the prior interview incriminated appellant as a participant in the crime and were damaging to his defense.
It is our view that the procedure followed by the prosecution in this case was erroneous as a matter of law and the objection to that procedure should have been sustained by the court.[7] We are further of the opinion, however, that in view of the totality of the evidence clearly establishing appellant's guilt of the offense with which he was charged, the inadmissible evidence introduced by the State under the guise of refreshing the witness' memory or for the announced purpose of impeachment would not have changed the result of the trial and must therefore be considered harmless error.
We have carefully considered the remaining points on appeal made by appellant but find that they are either not supported by the evidence, not sustained by applicable principles of law, or not sufficiently harmful as to require a reversal of the judgment appealed. The judgment is accordingly affirmed.
JOHNSON, C.J., and WIGGINTON and RAWLS, JJ., concur.
NOTES
[1] Singer v. State, (Fla. 1959) 109 So.2d 7, 14.
[2] Irvin v. Dowd, (1960) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, 756.
[3] Swain v. Alabama, (1965) 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.
[4] Schneble v. State, (Fla. 1967) 201 So.2d 881.
[5] Miranda v. Arizona, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
[6] Application of Tune, (3rd Cir., 1956) 230 F.2d 883; Brown v. United States, (10th Cir., 1966) 356 F.2d 230.
[7] Rankin v. State (Fla. 1962) 143 So.2d 193.