250 So.2d 888 (1971)
Billy Ray OLIVER, Petitioner,
v.
STATE of Florida, Respondent.
James COLBERT, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 40458, 40459.
Supreme Court of Florida.
July 7, 1971.
Johnson & Marshall, Jacksonville, and Alvin J. Bronstein, Cambridge, Mass., for petitioners.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for respondent.
PER CURIAM.
Petitioners seek certiorari review of the decisions rendered in their respective cases by the District Court of Appeal, First District: Oliver v. State of Florida, 239 So.2d 637 (1971); Colbert v. State of Florida, 239 So.2d 642 (1971). We have consolidated these causes because they both arise out of the same general factual situation.
On April 5, 1968, during a period of racial unrest in Tallahassee, Florida, following the assassination of Dr. Martin Luther King, a local grocery store was burned by arsonists. Travis Earl Crow, III, who was sleeping in the rear of the building at the time, died of burns and smoke inhalation. Petitioners were ultimately indicted, tried separately, and convicted of first degree murder for the death of Mr. Crow. In each case, the jury recommended mercy.
Petitioner Oliver, then fifteen years of age, was confined in the Leon County jail on a charge unrelated to this case, when local law enforcement officers began to interrogate him as a prime suspect in the arson incident. The interrogations were conducted *889 for varying lengths of time during six nights between May 21 and May 28, 1968. Oliver was not brought before a magistrate until June 26, 1968, long after self-incriminating statements had been elicited from him.
Petitioner Colbert, then 17 years of age, was picked up at his home sometime after 2:00 a.m. on May 24, 1968, purportedly on the suspicion that he was involved in a forged check incident. Testimony given by officers indicates that at the time of the pickup, he was already being considered as a suspect for the arson incident. He was taken into custody without a warrant, and interrogated until he produced an incriminating statement. On May 30, a County Judge's warrant was issued against both petitioners. It is uncontroverted that the first time either petitioner was brought before a judicial officer in accord with Fla. Stat. §§ 901.06 and 901.23, F.S.A., was on June 26, 1968; this was more than a month after the initiation of the interrogations.
This Court has intimated that a failure to bring a defendant before a magistrate would likely result in strong action by this Court. Milton v. Cochran, 147 So.2d 137, at 141 (Fla. 1962); State ex rel. Carty v. Purdy, 240 So.2d 480, at 481 (Fla. 1970), [in which the views of the late Mr. Justice Thornal as given in Dawson v. State, 139 So.2d 408, at 422 (Fla. 1962), were adopted]. We find that the totality of circumstances in these cases manifestly requires nullification of these convictions on account of the failure of local law enforcement officials to comply with Fla. Stat. §§ 901.06 and 901.23, F.S.A. The rationale supporting our decision may be found in the cases of McNabb v. United States, 318 U.S. 332, at 343-344, 63 S.Ct. 608, 87 L.Ed. 819 (1942), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), since Rule 5(a) of the Federal Rules of Criminal Procedure (then in effect) was analogous to our statutes. See Jacobs v. State, 248 So.2d 515 (Fla. 1971), wherein the District Court of Appeal, First District, required a new trial for a defendant who was not brought before a magistrate until long after his arrest.
In the case of both petitioners, Miranda warnings [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] were given at the time of the interrogations, but the petitioners maintain that these warnings were not understood. Considering the coercive atmosphere suggested by the record, the questionable mental ability of Oliver (I.Q. in the middle 70's range), the dispute over whether the warnings were properly given and whether they were properly understood, we find that the failure of the law enforcement officers to bring the petitioners before committing magistrates rendered any incriminating responses involuntary as a matter of law. It follows accordingly that the admissions and incriminating statements made by petitioners prior to their appearance before the magistrate on June 26, 1968, were inadmissible as evidence and should not have been allowed in at trial. Evidence gained through the acquisition of these statements and admissions by the law enforcement officers was necessarily inadmissible as well.
Having decided that new trials are required for both petitioners, our attention now turns to the issue of venue. It is this issue which has given rise to the conflict necessary for our jurisdiction. From the record, we find that a change in venue was sought because the June 27, 1968 edition of the "Tallahassee Democrat", the sole daily newspaper published in the general Tallahassee area, featured a transcript of an alleged confession made by Oliver; the transcript was presented in summarized form, followed by selected portions. In this alleged confession, Oliver implicated himself and others including Colbert, and he stated *890 a motive for the crime and gave a description of it.
In Singer v. State, 109 So.2d 7 (Fla. 1959), we had occasion to discuss the effect of pretrial publicity and the attendant obligations of the press, the prosecution and the defense. We found that the substance of the publicity in Singer was not sufficient to demonstrate that the trial judge committed palpable error in denying a venue change. But we made specific note of the fact that the printing of a confession would constitute a "trial by newspaper," and we took care to point out that no confessions had been presented as part of the publicity in the Singer case. In the instant cases, the District Court created conflict with Singer when it held that there was no abuse of discretion in the trial court's denial of change of venue motions. We now resolve this conflict by announcing that, as a general rule, when a "confession" is featured in news media coverage of a prosecution, as here, a change of venue motion should be granted whenever requested; we also hold that in the case sub judice the voir dire process cannot cure the effect of a "confession" which has been given news media coverage.
As a final comment, we agree with the District Court below that the procedure used by the prosecution regarding the impeachment of Martha Peterson, a witness, was erroneous as a matter of law.
Certiorari is granted in these consolidated cases, and the opinions of the District Court are quashed to the extent indicated herein; these causes are to be remanded with instructions that petitioners are to be granted new trials in a different venue.
It is so ordered.
ERVIN, Acting C.J., and CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.