302 So.2d 136 (1974)
Ira C. CHAPMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 73-331.
District Court of Appeal of Florida, Second District.
October 9, 1974.
Rehearing Denied November 12, 1974.
James A. Gardner, Public Defender, Sarasota, and Ellen Condon, Asst. Public Defender, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Guy E. Labalme, Asst. Atty. Gen., Tampa, for appellee.
MANN (Ret.), Judge.
After a trial by jury Chapman was convicted of rape and sentenced to 75 years in prison. He now appeals this conviction contending that a deposition taken in his absence was impermissibly used as evidence against him and further contending that the court improperly called his alleged accomplice as a court witness for the purpose of allowing the prosecution to impeach him by prior inconsistent statements.
Chapman and his neighbor's 15-year old son, Hurley, headed to work in Tampa *137 on the morning of September 8. Shortly thereafter they picked up Therese and her dog. She was hitchhiking to Cocoa Beach. After stopping for cigarettes, gas and, finally, for coffee in Plant City, Chapman let Hurley drive, while he conversed with Therese.
Not unexpectedly, the defendant's and prosecutrix' story differ greatly. Therese testified that after the Plant City stop they began driving North under the pretext of collecting a debt owed to Chapman. Hurley, directed by Chapman, drove the car to a back road near the Hillsborough Acres subdivision. He parked the car and left, followed by Therese's dog, to find some wire to fix the car's loose muffler. Chapman, leaning from the front seat toward Therese, placed his hand upon her knee and informed her that she had a "nice body." She told him to leave her alone and left the car to call her dog.
Chapman followed, slipped his arms around her and placed his hands down the front of her jeans. She ran but was caught and dragged back to the car. Removing her shoes, she again attempted to escape and was again caught. She managed, however, to strike Chapman over his left eye with the heel of her shoe. He then hit her on the face, threw her to the ground and began either hitting or kicking her in the ribs, threatening to use a knife if she resisted intercourse. In unclothing her, he ripped her jeans in the crotch area. The ripped jeans were introduced into evidence. Chapman then raped her as did Hurley when he returned. Subsequently, the car would not start and Chapman walked to a nearby house to get help. A man driving a white Cadillac returned with him and jumped the battery. Since she was still afraid, Therese said nothing.
Therese further testified that when she was later released from the car, she ran to a nearby telephone employee, Berry, who on her request used his equipment to call the police. Since Berry was moving to New York, his testimony was preserved by the state in a deposition taken pursuant to Rule 3.190(j). He testified that Therese ran up to his truck and asked him to call the police because she had been raped. He did so, then continued working. He testified that Therese's jeans were ripped in the crotch area and that she appeared somewhat nervous and upset though not crying; she had had difficulty speaking.
Officer Surrency responded to the call. He testified that Therese gave him a description of the car, its license number and a description of both Hurley and Chapman. When he later went to the Chapman residence he saw that Chapman had a bruise over his left eye, as Therese had indicated. Chapman told him that he had loaned his car out to Hurley and Hurley's brother earlier in the day. When arrested by Surrency for rape, Chapman fled.
Chapman testified that Therese consented to have intercourse with him and with Hurley for $10 each. She had led them to the abandoned road and no mention had been made of collecting a debt. Moreover, she willingly and without force had unclothed herself. The allegations of rape had apparently arisen because of their refusal to pay her. Chapman further testified that he had not told Officer Surrency that he had loaned his car out and he had fled only because he was wanted for misdemeanor violations in California. He feared his arrest might lead to extradition to that state and separation from his family.
The owner of the white Cadillac who helped to start Chapman's car testified that Therese had seemed neither upset nor excited and was not crying.
Therese was subsequently called as court witness to allow the defense to lay a predicate for impeaching her. Mr. and Mrs. Howard Burke were then called and each testified separately that Therese had told them that no physical force had been used against her and that defendants had not threatened her with any weapons. Therese had earlier testified that she told the Burkes the same story she had related in court. Moreover, the Burkes, former neighbors *138 of Therese, testified that her reputation as to chastity in the community was that of a "tramp."
After the defense rested, Hurley was called as a court witness at the prosecution's request. He had given inconsistent statements to the prosecutor. Hurley was not examined by the court. The prosecutor, however, elicited testimony from him that closely corroborated the defendant's testimony and which exculpated defendant on the consent issue. The prosecutor then impeached the witness by reading inconsistent sworn statements he had previously made to the police. If considered as a substantive evidence, these statements closely corroborated the prosecutrix's prior testimony. Although Hurley remembered giving a statement to the police, he could not recall the specific questions and answers read by prosecutor. He indicated on cross-examination by the defense counsel that his attorney had forced him to make the statements to avoid prosecution,[1] he bluntly denied their veracity, stating that neither he nor Chapman had raped the girl.
No reversible error occurred when the court called Hurley as its own witness and allowed the prosecution to impeach his testimony through the use of prior inconsistent statements. Clearly the court may call as its own witness an eyewitness to the crime who has given conflicting statements to the state attorney. Brown v. State, 1926, 91 Fla. 682, 108 So. 842. A witness called by the court may be cross-examined and impeached by both parties. Id. See also, Olive v. State, 1938, 131 Fla. 548, 179 So. 811; Hall v. State, 1939, 136 Fla. 644, 187 So. 392; Annotation, 67 A.L.R.2d 538 at 555. Unlike the court witness in Rankin v. State, Fla. 1962, 143 So.2d 193, Hurley gave testimony which, being exculpatory as to the defendant, was detrimental to the state's case. See, Oliver v. State, Fla.App.1st 1970, 239 So.2d 637, reversed on other grounds, Fla., 250 So.2d 888. The state was therefore entitled to use a prior inconsistent statement to impeach the witness under instructions to the jury limiting its use to impeachment purposes only. Sutton v. State, Fla. App.1st 1970, 239 So.2d 644.
Secondly, appellant contends that the prosecutor's failure to comply with the requirements of Rule 3.190(j) renders the deposition of the telephone repairman inadmissible. Since the deposition testimony was prejudicial to appellant, he argues that its admission requires a new trial. See, Fla. RCrP 3.600. Clearly violations of the rule were committed. That rule requires reasonable notice to defense counsel when the state wishes to take a deposition, but defendant's counsel received only one day's notice. The defendant, who was in custody at the time, was neither notified nor brought to the taking of the deposition as the rule unmistakably requires. Moreover, although it is not argued on appeal, nothing in the record indicates a good faith effort on the part of the prosecutor to secure the witness' presence at trial; the mere absence of the witness from the state does not mean he is "unavailable" to testify. cf. Barber v. Page, 1968, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255.
The use of a deposition, taken in the involuntary absence of a defendant, as evidence against him violates the defendant's right to be personally present during his trial and his Sixth Amendment right to confront witnesses. The presence of defendant's counsel, considering the unreasonably short notice he was given of the deposition taking, is insufficient to cure the error. As Mr. Justice Cardozo noted in Snyder v. Massachusetts, 291 U.S. 97, at 114, 54 S.Ct. 330, at 335, 78 L.Ed. 674, "A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel ... and cross-examine his accusers." (citations omitted). Due to the *139 nature of the error, we can only speculate as to what would have happened had defendant been actually present and been given the opportunity to advise with his counsel. Considering the closeness of the evidence in this case, such speculations are insufficient to establish beyond a reasonable doubt that the error did not contribute to defendant's conviction. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; cf. Wade v. United States, 1971, 142 U.S.App.D.C. 356, 441 F.2d 1046. Additionally, since the record does not indicate that defendant either actually knew of the deposition taking or should have known of it, counsel's failure timely to object to defendant's absence did not waive these important rights. See, State v. Melendez, Fla. 1971, 244 So.2d 137.
Reversed and remanded for a new trial.
McNULTY, C.J., and HOBSON, J., concur.
NOTES
[1] Since the issue was neither raised on appeal nor raised before the trial court; we do not consider whether Hurley's allegations required a judicial determination of the voluntariness of the impeaching statement, but see LaFrance v. Bohlinger, 1st Cir.1974, 499 F.2d 29.