383 So.2d 236 (1980)
The MIAMI HERALD PUBLISHING COMPANY, a Division of Knight-Ridder Newspapers, Inc. (the Miami Herald), Palm Beach Newspapers, Inc. (Palm Beach Post-Times), Wtwv, Inc. (Wtvx-Tv, Channel 34, Fort Pierce), Cape Publications, Inc. (Today) and Vero Beach Press-Journal, Inc. (Vero Beach Press-Journal), Petitioners,
v.
Honorable Royce R. LEWIS, the State of Florida, and Brooks John Bellay, Respondents.
No. 79-2557.
District Court of Appeal of Florida, Fourth District.
February 15, 1980.
On Rehearing May 21, 1980.
*237 Sanford L. Bohrer, Parker D. Thomson and Richard J. Ovelmen of Paul & Thomson, Miami, for petitioners.
William T. McCluan, Melbourne, for petitioner Cape Publications, Inc.
Elton H. Schwarz, Public Defender, and Paul B. Kanarek, Asst. Public Defender, Vero Beach, for respondent Brooks John Bellay.

ON PETITION FOR REVIEW OF ORDER CLOSING PRETRIAL SUPPRESSION HEARING TO THE PRESS AND PUBLIC
LETTS, Judge.
This proceeding, filed by the media under Florida Appellate Rule 9.100(d), protests a lower court ruling which (1) closed a pre-trial hearing on a motion to suppress and (2) sealed the records pertaining to that suppression hearing until the selection and swearing in of the jury at the forthcoming trial. We affirm the former and reverse the latter.
The accused male in this ghastly case, aged 14, is alleged to have had sexual relations with, and then to have murdered, a female child. Preparing for the trial, defense counsel moved for a change of venue because of excessive pre-trial publicity throughout Indian River County (population 56,000). In this regard the defense cited in excess of fifty articles in four newspapers and extensive radio and TV coverage all supposedly featuring lurid details of the alleged offense and reporting confessions by the accused. This motion for a change of venue was denied.
Later filed by the defense was a motion to close the hearing on the suppression of the confessions. The media were notified of this motion to close and were represented at argument thereon, before the trial judge. The state did not oppose the motion. At the conclusion of the argument the trial judge ordered the suppression proceedings closed to the media and public.[1] Thereafter, when the suppression proceedings were concluded the Judge denied the motion to suppress, yet sealed all the court records of the suppression proceeding until commencement of trial. The media seeks reversal of the trial judge's actions.

AS TO THE CLOSING OF THE HEARING
This point involves a classic illustration of the old dilemma: which comes first, the chicken or the egg? In Miami Herald Publishing Company v. McIntosh, 340 So.2d 904, 910 (Fla. 1977) our Supreme Court held the press entitled to "... notice and a hearing before any trial court enjoins or limits publication of court proceedings" (emphasis supplied). We followed this mandate in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978) as did the trial judge in the case at bar. However the media is far from satisfied with mere notice and a hearing with only argument and no evidence. In the case before us now for instance, the media *238 points out that at the hearing afforded to them "... no evidence existed or was presented to support closure of the suppression hearing." Therefore they argue that because the trial judge had not heard or seen the confessions or any evidence he had no basis to conclude that:
(1) Closure [was] necessary to prevent a serious and imminent threat to the administration of justice.
(2) that no less restrictive alternative measures [were] available; and
(3) that closure will in fact achieve the Court's purpose. Miami Herald Publishing Company v. State, 363 So.2d 603, 606 (Fla. 4th DCA 1978)[2]
However we fail to comprehend how the trial judge can come to any intelligent conclusion until he has first heard the substance of the evidence sought to be closed. Must the hearing on a motion to suppress be open while the judge considers whether it should be closed? An affirmative answer would make any request for closure moot or require a gag order. On the other hand as this court said in Miami Herald v. State, supra:
... the proponents of the closing can argue that there exist cogent and compelling reasons for the closing in the form of imminent personal peril. The media is thereupon reduced to responding that there are not, without any actual knowledge of that which it asserts. We find this unfair to the media yet can offer no cure at the trial level, short of requiring an open rather than a closed hearing and allowing the entering of a subsequent gag order if deemed necessary. Such a solution might be workable, but we cannot implement it at this level. The latest Supreme Court rule on the subject [Fla.App.R. 9.100(d)] specifically envisages proceedings from which the press is excluded. Such would certainly pre-empt us from a major departure from this concept under which we would prefer to include the press at all hearings and then "gag" them if required. (p. 607)
Notwithstanding these misgivings we continue to believe that any alternative must come from the Supreme Court. In the meantime the media's remedy is recourse to this court for a review of the trial judge's actions.
In support of our conclusion we have examined the latest pronouncement about excluding the media from pre-trial suppression of confession hearings, issued by the Supreme Court of the United States in Gannett Company v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). There can be no question but that Gannett stands for the proposition that the media has no constitutional right of access to a pre-trial suppression of a confession hearing and that in order "to safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." (p. 2904)
Likewise a careful reading of McIntosh does not suggest to us that the trial judge acted improperly in this case. Accordingly we find no error in the trial judge's closure of the hearing on the motion to suppress.

AS TO SEALING OF THE RECORD UNTIL TRIAL
We are of the opinion that the trial judge erred in sealing the record of the suppression hearing until the selection and swearing in of the jury. We recently held in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978) that a record cannot be sealed unless it:
1. Is necessary to prevent a serious and imminent threat to the administration of justice.
2. Can be established that no less restrictive alternative measures are available.
3. Will in fact achieve the Court's purpose.
*239 It is true that in Miami Herald v. State a sentencing, rather than a pre-trial proceeding, was involved. Moreover we are conscious of the impact of Gannett decided later. Nevertheless we hold that these same three criteria should be applied to pre-trial hearings as well, upon the same premise that we have cited before, namely that "what transpires in the court room is public property." Craig v. Harney 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).[3]
In its written order sealing the record, the trial judge concluded that all three criteria had been satisfied in the instant case. We disagree as to the second.
As to the first criterion, we agree that there arises a serious and imminent threat to the administration of justice if the printing or reporting of a transcript of a confession is "featured" prior to trial. As the Florida Supreme Court said in Oliver v. State, 250 So.2d 888 (Fla. 1971) such featuring amounts to a "trial by newspaper" which is incapable of cure by the voir dire process. This same principle was reiterated in Hoy v. State, 353 So.2d 826 (Fla. 1977). However at issue in Oliver and Hoy, supra, was whether a motion for change of venue should have been granted after the alleged prejudicial publicity had already taken place. Here, obviously, the alleged prejudicial publicity has not yet taken place since the record of the suppression hearing remains sealed and there is no evidence that the details of any alleged confessions have otherwise been made public. Nevertheless, it could not be unreasonable for the trial court to here conclude, in the light of the substantial pre-trial publicity which has already occurred, that the details of any confessions sought to be suppressed would also be given substantial coverage in the local media raising the possibility of the result in Oliver and Hoy.
Thus since it appears that the trial court's purpose in the case at bar was to avoid a repetition of the publicity already aired and to avoid the printing of lurid details of the confessions, we also cannot say that the closure did not also satisfy the third criterion.
Notwithstanding the apparent satisfaction of two out of the three of the criterion adopted, we cannot agree that it has been demonstrated that there were no less restrictive measures available.
In Gannett the United States Supreme Court pointed out on pages 2904 and 2905 why closure, as distinct from a less restrictive measure, is justified.
This Court has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. E.g., Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. Cf. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. Sheppard v. Maxwell, supra. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.
Publicity concerning pretrial suppression hearings such as the one involved in the present case poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury. Cf. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Publicity concerning the proceedings at a pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial.

*240 The danger of publicity concerning pre-trial suppression hearings is particularly acute, because it may be difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial. After the commencement of the trial itself, inadmissible prejudicial information about a defendant can be kept from a jury by a variety of means. When such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors. Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun. Cf. Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663. (pp. 2904, 2905) (footnotes omitted)
Clearly the danger foreseen in Gannett is based on the hazard of potential jurors having knowledge of inculpatory matters wholly inadmissible at the actual trial. Such a hazard is totally absent here because the judge ruled that the confession would be admitted. Thus the jury will hear the confession in any event.
We realize that the problem of Oliver and Hoy still remains in the case at bar but, under the circumstances of this case, find that there are less restrictive measures available than a sealing of the record until trial, for example a change in venue. Apparently defense counsel in the case at hand agrees because at oral argument before this court he declared a preference for a venue change rather than a continued sealing of the record. Yet the defense contends that sealing remains vital because the trial court has already denied a motion for a change of venue. However that motion denied was predicated only on publicity up to the time of that hearing and could not include publicity arising out of the suppression proceedings not yet published.
A change of venue is itself a drastic measure to be invoked only if the defendant cannot receive a fair trial in the local community.[4] Hence whether such a change in venue will prove necessary in the instant case will depend on how the media treats the record which we here unseal. If the media "features" the confessions in the manner condemned by Oliver and Hoy, then the trial court will have no alternative but to grant a venue change. However a decision on that is premature as of this writing.
As we have already said the granting of a change of venue is a major step which involves considerable difficulty, more delay to the state and a continuation of severe emotional trauma for the defendant as well as enormous expense ultimately to be borne in large part by the taxpayer. Such considerations may at first glance, make this trial court's choice appear reasonable, i.e., a short delay in disclosing the suppression proceedings versus the lengthy delay and great expense of a change of venue.[5] However, it has been previously determined that although a defendant's right to a fair trial is paramount to the public's right to simultaneously know what occurs in a judicial proceeding, it is only when the accused's rights cannot be safeguarded by some reasonable alternative, that a judicial record should be sealed, Miami Herald v. State, supra.
We do not foreclose the possibility that there will be cases of such notoriety that a change of venue will not suffice. Thus our conclusion here is expressly limited to the circumstances of this case.
We have considered Judge Antead's special concurrence expressing concern that Gannett may have overruled Miami Herald Publishing Company v. State, at any rate so far as pretrial proceedings are concerned. However, for the very reasons set forth *241 hereafter by Judge Anstead, we are convinced that Gannett does not preclude what we have here determined. Accordingly, we see no reason for further delay in unsealing this record.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS TO THE TRIAL JUDGE TO UNSEAL THE RECORD.
GLICKSTEIN, J., concurs.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, specially concurring:
Although I concur in the majority's opinion, I feel bound to express my sympathy for a trial court faced with a request for closure in the wake of Gannett v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).[1] My reservations have to do with the effect of the Gannett decision on our decision in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978) and the three-pronged closure test set out therein. My conclusion is that although Gannett has knocked away many of the underpinnings of the three-pronged test, a similar test is still justified and its application valid under the circumstances of this case.
Prior to the Gannett decision this court stated in Miami Herald Publishing Company v. State, supra, that "what transpires in the court room is public property."[2] We agreed that a hearing should not be closed absent a showing that
... (1) closure is necessary to prevent a serious and imminent threat to the administration of justice, (2) that no less restrictive alternative measures are available, and (3) that closure will in fact achieve the Court's purpose.
This test is essentially the same as the two-pronged test set out in the American Bar Association's Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press, § 8-3.2, at page 16 (Approved Draft 1978). The commentary to that standard acknowledged that it was substantially predicated on the assumption that the public does have sixth amendment rights to access to all judicial proceedings:
It has been argued that the press has a first amendment right of access to the court and court records that exceeds such rights of members of the public generally. This view has been rejected by the courts. The policy in this standard in favor of open proceedings and free access to court records rests on sixth amendment grounds.
* * * * * *
The public interest in open proceedings and free access to courts in a criminal case is at least as strong as the first amendment policy against prior restraints. Consequently, this standard follows the basic approach taken by the Supreme Court in Nebraska Press Association v. Stuart. Id. at 15-16.
While not expressly saying so, it is apparent that this court adopted the three-pronged test, supra, primarily for the reasons set out in the ABA commentary.[3] Then came Gannett, *242 which expressly held that the public and press had no sixth amendment rights of access.
The Gannett decision approved the closure of a pretrial suppression hearing under circumstances very similar to those involved herein and rejected the contention that the criteria set out in the Nebraska Press Association case and the ABA Standards should control the closure issue. In fact, the majority opinion in Gannett alluded to a prior ABA standard as support for its decision:
Until a year ago, the American Bar Association also endorsed the view that presiding officers should close pretrial hearings at the request of a defendant unless there was no "substantial likelihood" that the defendant would be prejudiced by an open proceeding. ABA Advisory Committee on Fair Trial and Free Press, Project on Standards Relating to Fair Trial and Free Press § 3.1 (1968 draft). The ABA, following the "approach taken by the Supreme Court in Nebraska Press Association v. Stuart," has now changed this standard. American Bar Association Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press, § 8-3.2, at p. 16 (Approved Draft 1978). The Nebraska Press case, however, is irrelevant to the question presented here. See n. 25, infra. 99 S.Ct. at 2911, fn. 23.
This Court's decision in Nebraska Press Assn. v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683, is of no assistance to the petitioners in this case. The Nebraska Press case involved a direct prior restraint imposed by a trial judge on the members of the press, prohibiting them from disseminating information about a criminal trial. Since "it has been generally, if not universally, considered that it is the chief purpose of the [First Amendment's] guaranty to prevent previous restraints on publication," Near v. Minnesota ex rel. Olson, 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357, the Court held that the order violated the constitutional guarantee of a free press. See also Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355. The exclusion order in the present case, by contrast, did not prevent the petitioner from publishing any information in its possession. The proper inquiry, therefore, is whether the petitioner was denied any constitutional right of access. 99 S.Ct. at 2912, fn. 25.
In contrast with the majority's position, the dissenting justices in Gannett advocated recognition of a right of access to judicial proceedings in the public under the sixth amendment and adoption of a three-pronged closure standard almost identical to the one adopted by this court in Miami Herald v. State, supra.[4]
Notwithstanding its rejection of the contention that the ABA standard was constitutionally mandated, the majority opinion in Gannett indicated that the states might be free to adopt a stricter standard for closure.[5] Indeed, the court indicated that its ruling was limited to a consideration of the issue of whether there were constitutional bars to the entry of a trial court order predicated on a finding of a "reasonable probability of prejudice" to the defendant's right to a fair trial. The court was careful to note that failure to close a pretrial hearing or to take other protective measures to minimize the effects of pretrial publicity, would not necessarily warrant "the extreme remedy of reversal of a conviction."[6] In other words the states have been left free to devise their own methods of dealing with the issue of open judicial proceedings as long as those methods do not contravene the constitutional rights of the defendant.
*243 The question we now must face is whether we should abandon the three-pronged standard in view of the holding in Gannett and such standard is not constitutionally mandated.[7] In view of our consistent recognition of the existence of a substantial public policy in favor of open judicial proceedings, I believe this question should be answered in the negative, but with an explanation. In State ex rel. Gore Newspaper Company v. Tyson, 313 So.2d 777 (Fla. 4th DCA 1975) this court recognized the existence of a fundamental right of access to judicial proceedings:
While we find no specific constitutional or statutory provision speaking directly to the right of the public to attend a judicial proceeding (as distinguished from the right of every person to seek redress in the courts and the right to a public trial in a criminal proceeding as specifically stated in Sections 16 and 21, Declaration of Rights of the Florida Constitution), the "open court" concept is an indispensable part of our system of government and our way of life. See also Wigmore, supra, sec. 1834. As pointed out in Scripps [v. Fulton,] supra [125 N.E.2d], at 900:
"... The basis of the constitutional guarantee of an `open court' is to be found in the development of the common law and would be a recognized right of the people without constitutional sanction."

Public access to the courts is as fundamental as the litigant's right to a fair trial  hence the conflict and the inevitable balancing of rights and interests. 313 So.2d 777 at 786.
Hence, our recognition of a right of access to judicial proceedings has not been predicated solely on the existence of any "specific constitutional or statutory provision" and accordingly, the impact of Gannett obviously is much less than it would be if our recognition of the right was solely predicated on the existence of a constitutional right. The reasons for recognition of such a right are set out much more cogently than is possible here in Judge Mager's opinion in State ex rel. Gore Newspaper Company v. Tyson, supra, and in the concurring opinion of Justice Powell and the dissenting opinion of Justice Blackmun in Gannett, supra. Needless to say, Florida has consistently been in the forefront in advocating open government, not only through legislative enactments of sunshine laws and public record laws, but also in judicial action such as making judicial proceedings more accessible to the public via "cameras in the courtroom." Accordingly, there is no question but that we have recognized that the public has a substantial stake in open judicial proceedings.
However, the competing interests of the defendant in securing a fair trial are also substantial; and there can be little question, after Gannett, that if a conflict occurs between the right of access and the defendant's fair trial or other constitutional rights, the defendant must prevail. In other words the primary obligation of a trial judge under such circumstances is to assure the defendant a constitutionally mandated fair trial. If that can only be done by excluding the public from a pretrial suppression hearing, then that is what must be done. However, as long as reasonable alternatives to closure exist, which will accomplish the same purpose of securing defendant's fair trial rights as closure, and such alternatives do not conflict with any other constitutional rights of the defendant, then closure may still be denied.[8] In other words, I do not *244 believe we should abandon the three-pronged standard we adopted in Miami Herald v. State, supra.
Under the three-pronged test we have required that exceptional circumstances exist before a judicial proceeding may be closed. Such a test is consistent with the similar strict standard applicable to motions for change of venue. Manning v. State, 378 So.2d 274 (Fla. 1979). Indeed, we have traditionally relied on a change of venue as an effective means of dealing with prejudicial pretrial publicity. Because Gannett has not prohibited our continued reliance on change of venue, rather than closure, I see no reason why we should embrace closure simply because any constitutional restraints on its use have been relaxed. While closure is necessarily predicated on speculation as to what will occur, a request for a change of venue is determined by the actual circumstances existing at the time. In other words, we should not encourage the use of a remedy based upon speculation where we have an equally effective alternative remedy available.[9]
In the case at hand the defendant's assertion that a change of venue would be a more desirable alternative to closure has removed any problem as to the existence of reasonable alternatives. While I do not believe the defendant has a right to choose when a change of venue should be granted as opposed to closure, his agreement to a change of venue herein waives any objections predicated upon the right to speedy trial or to trial in the county where the offense occurred. More importantly, the trial court will be able to determine whether the defendant can receive a fair trial based upon actual conditions existing at the time of trial rather than speculating as to the extent and effect of the disclosure of pretrial proceedings.
Because the Gannett decision has removed any constitutional predicate for invocation of the three-pronged standard set out in Miami Herald v. State to determine when pretrial suppression hearings may be closed, and because the trial courts are entitled to a conclusive statement of the standard to be applied in the wake of Gannett, I would grant the request of the petitioners and certify our decision today to the Florida Supreme Court as one involving an issue of great public interest.

ON PETITION FOR REHEARING
LETTS, Chief Judge.
The Media's petition for rehearing is granted to the extent that we now certify the entire opinion to the Supreme Court, deeming it to be a matter of great public importance.
As to the first portion of the opinion about closure of the hearing, we certify it primarily because of our expressed concern therein as to the practicality of the rule enunciated in McIntosh.[1] We also certify the opinion because of apprehension as to what effect the Gannett[2] decision has had on prior opinions from our State Supreme Court upon which we have hitherto relied.
In several recent opinions our State Supreme Court has expressed its dislike of "laundry lists." However, we certainly need more definite guidelines on this particular issue for, if nothing else, they will cut down on appeals every time the Media is denied access to a hearing. Moreover, they will hopefully reduce the editorial denunciation visited upon every trial judge who bars the Media from his courtroom.
*245 Following the lead of the Second District we are attempting to certify our entire opinion.[3] However the rules call for us to certify questions of great public importance and we are apprehensive that the Supreme Court might decline to accept such a broad approach. Accordingly, in the alternative, we ask the following specific certified questions:
1. HOW CAN THE TRIAL COURTS MEANINGFULLY INCLUDE THE MEDIA AT EVIDENTIARY HEARINGS CONVENED TO DECIDE WHETHER THE MEDIA SHOULD BE PRECLUDED FROM ACCESS TO THAT VERY SAME EVIDENCE?
2. SHOULD THIS COURT ABANDON THE THREE-PRONGED STANDARD WHICH WE ADOPTED IN MIAMI HERALD v. STATE IN VIEW OF THE HOLDING IN GANNETT?
The respondent Brooks John Bellay's petition for rehearing is denied.
He has already requested one change of venue and had it denied. To now claim in the next breath that a venue change would be denial of his constitutional rights to be tried in the county where the crime was committed under Section 16 of the Florida Constitution is an unacceptable about-face, undoubtedly inspired by footnote 4 of this court's opinion. No right to be tried in the community where the crime was committed was raised in the respondent's main brief. Indeed, during oral argument before this court, the respondent argued that a change of venue would be preferable to a continued sealing of the record. We commented on this particular orally stated preference in our opinion and that comment has not been challenged in the petition for rehearing.
Finally, our opinion as written did not command a venue change. Rather it afforded to the respondent the opportunity to consider how the media would treat the record unsealed, then renew the motion for a venue change, if he so desires.
ANSTEAD and GLICKSTEIN, JJ., concur.
NOTES
[1] Although surmountable in the case at bar, the media did not see fit to furnish us with a transcript of this hearing. Appellate decisions are often necessarily grounded upon a record and lack of same is a fatal omission in many appeals. We also note we were not favored with examples of the alleged excessive pre-trial publicity.
[2] We note that this cited case involved a sentencing proceeding not a pre-trial proceeding. However we see no reason why the same criteria should not apply to both as we shall discuss hereafter.
[3] See also the language of Appellate Rule 9.100(d) (1978) which refers to trial court orders excluding the press:

"A petition to review an order excluding the press or public from access to any proceeding, any part of a proceeding... ."
[4] The defendant here claims no right to trial under the 6th Amendment in the district where the crime was committed. See Allegrezza v. Superior Court of Alameda County, 47 Cal. App.3d 948, 121 Cal. Rptr. 245 (1975).
[5] Indeed we cannot be certain that details of the confession involved will not be featured in the locality to which the case is transferred, if transferral becomes necessary.
[1] Gannett approved a trial court's closure of a suppression hearing and temporary sealing of the record where the trial court found that an open proceeding would pose a reasonable probability of prejudice to the defendant. Gannett, supra, at 2912. The trial court's finding here that closure was necessary to assure the defendant a fair trial constitutes almost an identical finding.
[2] See Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947) and Miami Herald Publishing v. McIntosh, 340 So.2d 904 (Fla. 1977). Interestingly, in contrast to the case at hand, Justice England filed a special concurrence in McIntosh citing Nebraska Press Ass'n. v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683, and noting that the case was "really quite easy" because it involved an "order least capable of withstanding constitutional scrutiny  one which imposes a prior restraint on reporting a public trial without notice to the media or any opportunity to be heard, and without any factual foundation demonstrating a need for the restraint."
[3] Interestingly, a footnote to the ABA commentary criticizes the New York Court of Appeals decision that was ultimately approved by the U.S. Supreme Court in Gannett:

Although there is authority holding that preliminary proceedings are not within the meaning of the sixth amendment, Gannett Co. v. De Pasquale, 43 N.Y.2d 370, 401 N.Y.S.2d 756, 372 N.E.2d 544 (1977), the great majority of courts have rejected that view. See, e.g., United States v. Clark, 475 F.2d 240 (2d Cir.1973); Bennett v. Rundle, 419 F.2d 599 (3d Cir.1969) (en banc). Id. at 15, fn. 1.
[4] Gannett, supra, dissent at 2937.
[5] Gannett, supra, at 2912-2913.
[6] Gannett, supra, at 2905, fn. 6.
[7] No standard is set out in the majority opinion in Gannett. Rather, trial judges have been told that they have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity" and should be "over-cautious" to take protective measures for the defendant's protection even when they are not "strictly and inescapably necessary." The trial court finding approved by Gannett had concluded that an open proceeding would pose a "reasonable probability of prejudice to [the] defendants." Id. at 2904, 2905, 2912.
[8] For a discussion of the rights of a defendant to be considered in determining the closure issue see the opinion of Wachtler, J. in Westchester Rockland v. Leggett, 48 N.Y.2d 430, 423 N.Y.S.2d 630, 399 N.E.2d 518, New York Court of Appeals, November 20, 1979, 5 Med.L.Rptr. 2009 at 2014-2015.
[9] This does not mean that exceptional situations will not sometimes occur which will require closure. The disclosure of an inadmissible statement in a highly publicized case, for instance, could possibly constitute sufficient cause. In Oliver v. State, 250 So.2d 888 (Fla. 1971), the Supreme Court first ruled that the statements involved should have been suppressed before announcing the general rule as noted in the majority pertaining to the featuring of confessions in the media. In Hoy v. State, 353 So.2d 826 (Fla. 1978), the Supreme Court distinguished Oliver in a case where a police official's reports of the defendant's statements had been publicized in advance of trial.
[1] Miami Herald Publishing Company v. McIntosh, 340 So.2d 904 (Fla. 1977).
[2] Gannett Company v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).
[3] See Olcott v. State, 378 So.2d 303 (Fla. 2d DCA 1979).