399 So.2d 973 (1981)
John P. MAGGARD, Appellant,
v.
STATE of Florida, Appellee.
No. 51614.
Supreme Court of Florida.
May 7, 1981.
Rehearing Denied July 10, 1981.
*974 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender, and Richard B. Greene, Ellen Morris and Jon May, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
ALDERMAN, Justice.
John Maggard was convicted of first-degree murder, and, following the jury's recommendation of death, he was sentenced to death. We find no reversible error in his conviction, but we do find that the court *975 reversibly erred in the sentencing portion of the trial when it allowed the State to introduce evidence to rebut the mitigating circumstance of no significant history of prior criminal activity after Maggard had expressly waived this mitigating factor.
Maggard, bitter over past employment disagreements, killed his employer, Hugh Fazende, by shooting him with a shotgun. Fazende died quickly from the shotgun blast which was fired into his home through a window. Maggard then entered the house and stole approximately $100. Thereafter, Maggard told several people that he had committed the murder.
Maggard challenges his conviction on several grounds. He first contends that the trial court erred in sustaining the State's objection to certain questions asked of two State witnesses on cross-examination. We reject this contention and hold that he was not prejudicially and improperly restricted in his cross-examination of these witnesses and that the court acted properly within its broad range of discretion in sustaining the State's objections. In the absence of a showing of abuse of discretion, we will not disturb the trial court's evidentiary ruling. Mikenas v. State, 367 So.2d 606 (Fla. 1978); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
Next, although he did not object at the time of trial, Maggard now argues that he was denied due process when the trial court excluded a prospective juror from the jury because of his views on capital punishment. Maggard also contends that the exclusion of jurors who oppose the death sentence in a bifurcated procedure violates his right to a jury representing a fair cross section of the community.
If a defendant does not want a prospective juror to be excused on the basis of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), he should make his objection known before the juror is excused. This is not an unreasonable requirement in view of the fact that it is certainly possible that the defendant himself does not want the particular juror to serve and is perfectly content to have the juror excused for cause by the court so that he will not have to use one of his peremptory challenges. Additionally, if the defendant were allowed to raise this point for the first time on appeal, he would be in a position to "sandbag" the trial court and the State by giving the appearance by his silence that he concurs in the court's excusal for cause of a particular juror. He could then proceed, awaiting the outcome of the trial, secure in the knowledge that if he receives the death sentence it would be set aside on appeal. We reaffirm our prior holdings in Brown v. State, 381 So.2d 690 (Fla. 1980), that where no objection is made before the trial court, defendant is in no position to raise this point on appeal.
Moreover, even if Maggard had timely objected, his contention that this venireman was improperly excused is totally without merit. During the jury voir dire, the court, speaking to the entire jury venire, stated:
The Court will now explain to you the standard by which your qualification to serve as a juror is to be measured. The Court will then ask you to search your own conscience and tell the Court whether, measured by that standard, you feel you are qualified to serve as a juror.
The fact that you may have reservations about or conscientious or religious scruples against capital punishment does not disqualify you to serve as a juror. It is entirely possible that a juror who believes that capital punishment should never be inflicted, and who is irrevocably committed to its abolition, could nevertheless subordinate his personal views to what he perceives to be his duty to abide by his oath as a juror and to obey the law of the state.
If you are willing to consider rendering a verdict that might result in the death penalty, and are not irrevocably committed, before the trial begins, to vote against a verdict that may result in the penalty of death regardless of the facts and circumstances that might emerge in *976 the course of the proceedings, you are qualified to serve as a juror.
However, if you would automatically vote against a verdict that might result in the penalty of death without regard to any evidence that might be developed at the trial, or if your attitude toward the death penalty would prevent you from making an impartial decision as to the Defendant's guilt, you are not qualified to serve as a juror.
Later during voir dire, the following colloquy took place:
THE COURT: Do you know of any reason why you could not or should not sit with us on this jury?
ROBERT McINTOSH: Yes, sir.
THE COURT: All right, sir.
ROBERT McINTOSH: It would disturb my conscience. It would disturb me to participate in the decision.
THE COURT: What type of decision?
ROBERT McINTOSH: The decision of  concerning murder.
THE COURT: Do you understand that first in this case if you reach a verdict it is to be based strictly on the law and the evidence in the case; that is whether he is guilty of first degree murder or second degree murder or third degree murder or manslaughter or not guilty?
ROBERT McINTOSH: Yes, your Honor.
THE COURT: And then I understand that you are speaking of the second phase of the case where you and eleven other people would be recommending to this Court whether the death sentence or life imprisonment should be imposed; is that correct?
ROBERT McINTOSH: Yes, your Honor.
THE COURT: And you say that your beliefs are such that even though it is not a binding suggestion or recommendation to this Court that you could not or should not participate in that aspect of the case?
ROBERT McINTOSH: Yes, your Honor.
THE COURT: Counsel have any other inquiry as to that respect of Mr. McIntosh?
MR. LYKKEBAK: None, your Honor.
MR. LORINCZ: None from the Defense.
Viewing the entire context of the voir dire, we find that the trial court correctly followed the Witherspoon standards and properly excused this prospective juror. Downs v. State, 386 So.2d 788 (Fla. 1980), cert. denied, ___ U.S. ___, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980); Brown v. State. See also Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).
We also reject Maggard's contention that he was denied his right to a jury representing a fair cross section of the community. In Riley v. State, 366 So.2d 19 (Fla. 1978), we held that defendants in bifurcated capital cases are not entitled to have on the jury that determines guilt or innocence jurors who are unalterably opposed to the death penalty because they represent a definable cross section of the community. See also Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
Maggard also contends that statements made by the prosecutor during closing arguments as to the prosecutor's personal beliefs violated his right to due process of law. Because he did not object to the prosecutorial comments during trial, Maggard is now precluded from asserting this argument on appeal. Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978). Moreover, the prosecutorial comments read in the entire context of closing arguments do not constitute prejudicial error so as to require a new trial.
Maggard's final contention that the court erred in permitting certain photographs into evidence is likewise without merit.
In addition to reviewing the record in light of the errors alleged by Maggard, we also have reviewed the record pursuant to Florida Rule of Appellate Procedure *977 9.140(f), and we conclude that no new trial is required. We, accordingly, affirm the conviction for murder in the first degree.
Maggard also challenges his death sentence on several grounds which we find to be meritorious. The court, in imposing a sentence of death, found no mitigating circumstances and found the following three aggravating circumstances:
The Court does find, as an aggravating circumstance, that the capital felony, the murder of HUGH C. FAZENDE, was committed while the Defendant was engaged in committing a burglary on the victim's premises, as stated in Section 921.141(5)(d).
The Court also finds, as an aggravating circumstance, that the capital felony was committed for pecuniary gain in that he took approximately $100.00 from the interior of the house after the homicide.
The Court further finds, as an aggravating circumstance, that the capital felony was especially heinous, atrocious, or cruel in that the Defendant herein was bitter over employment disagreements with the deceased for approximately one year, that shortly before this murder he bought a shotgun and on the day in question he parked his car approximately one-half mile from the victim's house, walked through a wooded area and thereafter shot the deceased through a window in the house; thereafter, while he was wearing gloves, he stole approximately $100.00 from the deceased's house, and thereafter waited on the scene for approximately one hour to see if any neighbors might show up after hearing two shotgun blasts. Section 921.141(5)(h).
Maggard correctly points out that the trial court, under the peculiar facts of the case before us, erroneously doubled up the aggravating circumstances of commission of the murder while he was engaged in committing a burglary and commission of the murder for pecuniary gain contrary to the dictates of Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
Maggard also contends that the court erred in finding that this capital felony was heinous, atrocious, or cruel. We agree. In State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we defined heinous to mean "extremely wicked or shockingly evil"; atrocious to mean "wicked and vile"; and cruel to mean "infliction of a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others." The evidence reveals that the victim died quickly from a single gunshot blast fired through a window, and there is no evidence indicating that the victim was aware that he was going to be shot. The record does not reveal that this capital felony "was accompanied by such additional acts as to set it apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." 283 So.2d at 9. Cf. Fleming v. State, 374 So.2d 954 (Fla. 1979); Kampff v. State, 371 So.2d 1007 (Fla. 1979); Riley v. State; Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).
We find no error in the trial court's conclusion that there are no mitigating circumstances present. But for an additional error committed by the court during the sentencing hearing, we would affirm the sentence since there is at least one viable aggravating circumstance and no mitigating circumstances. State v. Dixon. The additional error, however, is of such magnitude as to require a new sentencing hearing before the jury and court. After Maggard expressly waived any reliance on the mitigating factor of no significant prior criminal activity, the State, over Maggard's objection, was permitted to present extensive evidence of Maggard's prior criminal record of nonviolent offenses to rebut a mitigating factor upon which Maggard expressly stated he would not rely. Prior to the sentencing hearing, Maggard moved to exclude this evidence of nonviolent crimes and announced to the court that under no circumstances would he attempt to demonstrate to the jury that he had no significant history *978 of prior criminal activity. This motion was erroneously denied by the court.
Mitigating factors are for the defendant's benefit, and the State should not be allowed to present damaging evidence against the defendant to rebut a mitigating circumstance that the defendant expressly concedes does not exist. Furthermore, the jury should not be advised of the defendant's waiver. In instructing the jury, the court should exclude the waived mitigating circumstance from the list of mitigating circumstances read to the jury, and neither the State nor the defendant should be allowed to argue to the jury the existence or the nonexistence of such mitigating circumstance.
Accordingly, we affirm the conviction, but we reverse the sentence and remand this cause for a completely new sentencing hearing before a newly impaneled jury.
It is so ordered.
SUNDBERG, C.J., and BOYD and ENGLAND, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, with which OVERTON, J., concurs.
ADKINS, J., concurs as to conviction and dissents as to sentence.
McDONALD, Justice, concurring in part and dissenting in part.
I concur with the opinion in this cause except that part which remands for a new sentencing proceeding. I would reduce the sentence to life imprisonment without further proceedings.
OVERTON, J., concurs.